FILED

2018 JAN 26 AM 9: 26

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

## UNITED STATES DISTRICT COURT
## THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

STEPHEN KNUTH,

    **Plaintiff,**

v.

    CASE NO.: 3:18-cv-165-J-34MCR

GRUBHUB, INC.,

    **DEMAND FOR JURY TRIAL**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, STEPHEN KNUTH (hereinafter Plaintiff) by and through his undersigned counsel, and files this Complaint against the Defendant, GRUBHUB, INC. (hereinafter Defendant), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. Plaintiff alleges violation(s) of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

2. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and to prevent abusive "robo-calls" and "robo-texts."

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC,* -US--, 132 S.Ct. 740, 745, 191 L.Ed. 2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, describes these calls as 'the scourge of modern civilization, they wake us up on in the morning; they interrupt our dinner at night; they

force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." See Mims at 752 (quoting 137 Cong. Rec. 30, 821 (1991)). Senator Hollings "presumabl[y] intended to give telephone subscribers another option; telling the autodialers to simply stop calling." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1256 (11th Cir. Ct. App. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet on Consumer Protection Proposal*, FEDERAL COMMUNICATIONS COMMISSION (2016), https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal (last visited Apr 26, 2017).

## JURISDICTION AND VENUE

6. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, attorney fees, and costs.

7. Jurisdiction and venue for the purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012); *and*

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. Ct. App. 2014).

9. Venue is proper in this District because the Plaintiff resides in this District (Duval County, Florida), the violations occurred in this District and the Defendant transacts business within this District.

10. Plaintiff is a natural person, and citizen of the State of Florida, residing in Duval County, Florida.

11. At all material times herein, Defendant attempted to continue a business relationship with Plaintiff, which he revoked multiple times.

12. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014). In this instance, "called" also means the party who was texted.

13. Defendant is a financial entity attempting to collect on an alleged consumer debt from Plaintiff.

14. Defendant is a Delaware corporation with its principal place of business at 111 W. Washington St., Suite 2100, Chicago, IL 60602, and which conducts business within the State of Florida.

15. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue, (904)-XXX-6537 (hereinafter "cellular telephone"); and was the texted party and recipient of Defendant's hereafter described texts.

16. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by texting Plaintiff's cellular telephone with such frequency as can reasonably be expected to harass and in an effort to continue a business relationship with Plaintiff.

17. On or about March 3, 2017, Plaintiff began receiving texts from Defendant regarding an order from Bono's Pit Bar-B-Q. *See texts attached as Exhibit A.*

18. After the first text to his cell phone, Plaintiff texted "Stop." This was a clear revocation. Defendant, or its system, agreed, and responded five seconds later with an unsubscribing message. *Exhibit A.*

19. However, a mere second after the unsubscribing message, Plaintiff was texted two more times by Grub Hub. *Exhibit A.*

20. Plaintiff responded to these texts with another revocation: "Giving a written cease and desist to contact me." *Exhibit A.*

21. Three seconds later, Defendant texted Plaintiff again. *Exhibit A.*

22. The Defendant's texts continued through six more revocation texts. *Exhibit A.*

23. However, despite this obvious revocation, Defendant failed to stop.

24. Upon information and belief, some or all of the texts Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

25. Furthermore, each of the texts at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

26. Upon receipt of the calls, Plaintiff's caller identification feature identified the texts were being initiated from, but not limited to, the telephone number 323-18.

27. Each subsequent text Defendant placed to Plaintiff's cellular telephone number was done

4

so after Plaintiff explicitly revoked consent and without his express consent.

28. Each subsequent text Defendant placed to Plaintiff's cellular telephone number was knowingly and willfully placed to his cellular phone without express consent.

29. Each of the Plaintiff's requests for the harassment to end went ignored.

30. Defendant has, or should be in possession and/or control of, text logs, account notes, Autodialer reports and/or other records that detail the exact number of texts it placed to Plaintiff.

31. Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to text Plaintiff despite not having Plaintiff's express consent to text his cellular telephone and being clearly on notice that Plaintiff was represented by counsel.

32. Defendant has corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed texts, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal or unsubscribing of Plaintiff's cellular number from Defendant's texting list.

33. The structure of Defendant's corporate policies and procedures permits the continuation of texts to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to send such texts.

34. Defendant's corporate policies and procedures provided no means for Plaintiff to have his cellular number removed from Defendant's texting list; or, otherwise invoke and/or request the cessation and/or suppression of texts to Plaintiff from Defendant.

35. Defendant has corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff,

for its financial benefit.

36. Defendant has numerous complaints against it, across the country, asserting that its Autodialer continues to text individuals who have revoked consent to be texted by Defendant.

37. Plaintiff expressly revoked consent to Defendant's sending of texts to Plaintiff's cellular telephone number by the use of an Autodialer or prerecorded message immediately upon Defendant's placement of the calls.

38. Defendant knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

39. Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed texts to Plaintiff's cellular telephone.

40. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be texted or contacted.

41. None of Defendant's telephone texts placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

42. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious."

43. For each text Defendant sent to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls or texts.

44. For each text Defendant sent to Plaintiff's cellular telephone without express consent,

Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered calls was unnecessary because he repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered texts by dealing with notifications and pop ups that reflected the unwanted texts. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

45. Each and every text sent without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

46. Each and every text Defendant sent to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

47. Each and every text Defendant sent to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

48. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy and the intrusion upon his right of seclusion. Plaintiff also suffered from stress, embarrassment, indignation, emotional distress, mental distress, pain and suffering, and the phone calls aggravated an existing illness. Additionally, Plaintiff experienced loss of happiness, concentration, sleep, privacy, and reputation. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's

attempts to collect a consumer debt allegedly owed by Plaintiff.

## COUNT I (Violation of the TCPA)

49. Plaintiff incorporates and realleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

50. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the Autodialer calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that he wished for the calls to immediately cease and that he was represented by counsel.

51. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## TRIAL BY JURY

52. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

Dated this 26th day of January, 2018.

**MAX HUNTER STORY, P.A.**

**/s/ Max H. Story, Esq.**

_____

Max Story, Esquire
Florida Bar No. 0527238

8

Austin J. Griffin, Esquire.
Florida Bar No. 0117740
328 2ND Avenue North
Jacksonville Beach, Florida  32250
Telephone: (904) 372-4109
Fax: (904) 758-5333
max@storylawgroup.com
*Attorneys for Plaintiff*